ANDREW G. OOSTERBAAN
Chief, Child Exploitation & Obscenity Section
Criminal Division, U.S. Department of Justice
RAVI SINHA
HERBRINA D. SANDERS
Trial Attorneys
Child Exploitation & Obscenity Section
Criminal Division, U.S. Department of Justice
    1400 New York Avenue, NW, Suite 600
    Washington, DC, 20005
    Telephone: (202) 616-1951
    Facsimile: (202) 514-1793
    Email: ravi.sinha@usodj.gov
        herbrina.sanders@usdoj.gov

*Attorneys for Plaintiff*
*United States of America*

UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>WALTER LEE WILLIAMS,<br><br>Defendant. | CR No. 13-0302-PSG<br><br>UNITED STATES' RESPONSE TO WALTER WILLIAMS'MOTION TO DISMISS BASED ON LACK OF COMPUSLORY PROCESS AND/OR, IN THE ALTERNATIVE, FOR A JURY INSTRUCTION REGARDING DISPARATE ACCESS TO WITNESSES AND EVIDENCE (Doc. 36)<br><br>Motion Date: March 3, 2014<br>Motion Time: 10:00 a.m.<br>Trial Date: March 18, 2014<br>Time: 8:30 AM<br>Place: 880-Roybal |

    The United States opposes Defendant Walter Williams' Motion to Dismiss (Doc. 36; *filed* 2/1/14) and asks that it be denied. Defendant's motion asserts a violation of Defendant's Sixth Amendment compulsory process rights and, in broader terms, a violation of his Fifth Amendment due process rights. In asserting these deprivations,

Defendant relies heavily on a 2006 student Note[1] and a 2010 student Comment[2] to argue that the established mechanisms through which defendants commonly obtain testimony of foreign witnesses and gather evidence overseas are constitutionally flawed.[3]  But this Court need not delve so deeply into such scholarship to discern the contours of Defendant's constitutional rights.  A number of courts—including multiple federal Courts of Appeals—have considered the issues raised by Defendant and all have found that the longstanding testimony- and evidence-gathering mechanisms available to Defendant pass constitutional muster.  Moreover, courts have long recognized that defendants have scant bases for claiming constitutional deprivations when, like Walter Williams, they have failed to (1) avail themselves of the mechanisms for gathering evidence in foreign countries or (2) show that no avenues exist through which they might obtain material and favorable testimony.

Accordingly, this Court should decline Defendant's invitation to deviate from established law and should deny Defendant's motion in full.

### *Statement of Facts*

Because the facts of this case are likely well known to both counsel and the Court, the United States does not rehash them at length here.  Notably, for the present motion, Defendant has been indicted on four counts.  (Doc. 1; *filed* 4/30/13).  Count One alleges that Defendant engaged in the sexual exploitation of a child (commonly

---

[1] Robert Neale Lyman, Note, *Compulsory Process in a Globalized Era: Defendant Access to Mutual Legal Assistance Treaties*, 47 Va. J. Int'l L. 261 (2006) (cited by Defendant in Doc. 36, *passim*).

[2] David Whedbee, Comment, *The Faint Shadow of the Sixth Amendment: Substantial Imbalance in Evidence-Gathering Capacity Abroad Under the U.S.-P.R.C. Mutual Legal Assistance Agreement in Criminal Matters*, 12 Pac. Rim L. & Pol'y J. 561(2003) (cited by Defendant in Doc. 26, pgs. 6, 8, 9).

[3] As this Court is aware, a law review Note is generally is a student-authored piece that discusses and analyzes an original legal issue or problem.  A law review Comment is generally a student-authored piece that provides an analysis or critique of a recent case, piece of legislation, law journal article, or law-related book. Comments tend to be much shorter than Notes.

referred to as 'production of child pornography'), in violation of 18 U.S.C. § 2251(c). Count Two alleges that Defendant travelled with the intent to engage in illicit sexual conduct, in violation of 18 U.S.C. § 2243(b). Counts Three and Four allege that Defendant engaged in illicit sexual conduct in a foreign place. Generally speaking, the charged offenses arise from Defendant's sexual abuse of minors and production of child pornography during an early-2011 trip to the Philippines.

## *Argument*

### A. This Court's Inability to Subpoena Foreign Witnesses Does Not Violate Defendant's Constitutional Rights.

Defendant first argues that his prosecution under 18 U.S.C. §§ 2251(c) and 2243(c) violates his Fifth and Sixth Amendment rights because "courts decline to extend the right to compulsory process to foreign witnesses outside the territorial borders of the United States."[4] (Doc. 36, pg. 10). It is true that "United States courts lack power to subpoena witnesses[] (other than American citizens) from foreign countries." *United States v. Zabaneh*, 837 F.2d 1249, 1259-60 (5th Cir. 1988). But it is equally true that Defendant has no constitutional right to compel the testimony of foreign witnesses.

Courts have consistently rejected Defendant's argument that the Constitution guarantees him compulsory process. Instead, they have repeatedly affirmed the constitutional sufficiency of the long-established mechanisms that allow individuals in Defendant's position to seek testimony from foreign witnesses—including letters rogatory. *See* 28 U.S.C. § 1781(a)(2), (b)(2) (transmittal of letter rogatory or request); s*ee, e.g.*, *United States v. Yousef*, 327 F.3d 56, 114 n.46, 48 (2d Cir. 2003) (recognizing

---

[4] Though Defendant claims a deprivation of his Fifth Amendment due process rights, he concedes that the applicable due process analysis tracks the compulsory process analysis with regard to compelling witness testimony. Accordingly, the United States' compulsory process response should be applied to both. *See* Doc. 36, fn. 3 (Defendant recognizing that, "'There is apparently little, if any, difference in the analysis'" between Fifth Amendment due process and Sixth Amendment compulsory process claims.") (quoting *Gov't of Virgin Islands v. Mills*, 956 F.2d 443, 445 n. 4 (3d Cir. 1992)).

3

that district court's inability to subpoena defense witnesses located in the Philippines did not deprive defendants of any constitutional rights and that defendant could have used letters rogatory to seek evidence from the Philippines); *see also United States v. Moussaoui*, 382 F.3d 453, 464 (4th Cir. 2004) (acknowledging that the courts' inability to subpoena witnesses from foreign countries does not violate the compulsory process clause of the Sixth Amendment); *United States v. Sensi*, 879 F.2d 888, 899 (D.C. Cir. 1989) (explaining "it is well settled that a defendant's inability to subpoena foreign witnesses is not a bar to criminal prosecution," and stating that defendant could have used letters rogatory to obtain foreign-witness testimony); *Zabaneh*, 837 F.2d at 1259-60 ("It is well established … that convictions are not unconstitutional under the Sixth Amendment even though the United States courts lack power to subpoena witnesses[] (other than American citizens) from foreign countries."); *United States v. Greco*, 298 F.2d 247, 251 (2d Cir. 1962) ("[T]he Sixth Amendment can give the right to compulsory process only where it is within the power of the federal government to provide it.  Otherwise any defendant could forestall trial simply by specifying that a certain person living where he could not be forced to come to this country was required as a witness in his favor."); *United States v. Wolfson*, 322 F. Supp. 798, 819 (D. Del. 1971) ("[T]he mere fact that an American court lacks the power to subpoena witnesses, other than American citizens, from foreign countries, thus preventing a defendant from obtaining compulsory process for witnesses in his behalf, does not make any resulting conviction unconstitutional under the Sixth Amendment"); *United States v. Haim*, 218 F. Supp. 922, 925-27 (S.D.N.Y. 1963) (right to compulsory process arises only "where it is within the power of the federal government to provide it" and therefore the Sixth Amendment is not violated due to defendants' inability to subpoena potential foreign witnesses (citing *Greco*, 298 F.2d at 251)); *United States v. Emmanuel*, No. 06-20758-CR, 2007 WL 2002452, at *17 (S.D. Fla. July 5, 2007) (unpublished), *appeal docketed sub nom. United States v. Roy M. Belfast, Jr.*, No. 09-10461-AA (11th Cir. Jan. 29, 2009) ("[i]t is [ ] not unconstitutional for the Government to prosecute a case where

most of the physical evidence and witnesses are located in foreign countries." (citing *Greco*, 298 F.2d at 251)).

Additionally, Defendant's claim of a Sixth Amendment violation is premature. The Supreme Court has observed that "the Sixth Amendment does not by its terms grant to a criminal defendant the right to secure the attendance and testimony of any and all witnesses: it guarantees him 'compulsory process for obtaining *witnesses in his favor*.'" *United States v. Valenzuela-Bernal*, 458 U.S. 940, 867 (1982) (quoting U.S. Const. amend. VI) (emphasis in original).  To implicate the Sixth Amendment, the testimony that a defendant is claiming to have been deprived of must be "testimony [that] would have been *relevant* and *material*, and … *vital* to the defense." *Id.* (quoting *Washington v. Texas*, 388 U.S. 14, 16 (1967)) (emphasis and alteration in original). Thus, Defendant "must at least make some plausible showing of how [an absent witness's] testimony would have been both material and favorable to his defense," before a constitutional violation can be found.  *Id.*  Defendant has made no such showing–he does not even identify what testimony he seeks to obtain in his defense, much less whether that testimony is relevant, material, and vital to his case.

Instead, Defendant alludes to potentially calling D.M., a child witness who stated that Defendant had not molested him, (such testimony, although regarding uncharged conduct, would run counter to a charged victim's recollection of Defendant's interaction with D.M.) before conceding that there is no specific favorable testimony or evidence that he has in mind to rebut the charges against him.  (Doc. 36, 6-7, 12). Instead, Defendant argues that the Supreme Court's requirements should not apply to him because—though he has not attempted a single request through the letters rogatory process—he claims to have "no means of locating, let along obtaining cooperation from, potential defense witnesses." *Id.* at 12.  But Defendant's argument is both legally and factually flawed.  No known exception to the compulsory process jurisprudence's materiality and favorability requirements excuses Defendant's noncompliance. Moreover, in truth, Defendant has the same means for locating evidence and obtaining

testimony from foreign witnesses as most defendants charged with crimes involving overseas conduct. *See generally Ferrari v. United States*, 244 F.2d 132, 141-42 (9th Cir. 1957), *cert. den. sub nom. Cherpakov v. United States*, 355 U.S. 873 (1957) (recognizing that the government is under no duty to search for a defendant's witnesses). Indeed, given Defendant's extensive education, travel in the Philippines, long-distance communications with the Philippines-based victims, and knowledge of the circumstances surrounding the charged conduct, Defendant has significant advantages over most. That, in spite of his advantages, Defendant has done nothing to seek foreign evidence or testimony through any of the processes available to him significantly undercuts his constitutional claims. *See, e.g., Yousef*, 327 F.3d at 112 (recognizing that, because defendant did not seek to use letters rogatory or other evidence-gathering tools available to him, he "cannot now be heard to complain about his inability to obtain [foreign evidence]"); *see also Wolfson*, 322 F. Supp. at 820-22 (in dismissing defendant's compulsory process argument, the court noted that the defense failed to motion the court for a Rule 15 deposition of a foreign witness, and failed to request government's assistance in procuring the foreign witness).

**B. The Availability of Letters Rogatory Adequately Preserves Defendant's Constitutional Rights.**

Defendant next argues that the existence of the United States' Mutual Legal Assistance Treaty ("MLAT") with the Philippines allows the United States to seek and gather evidence that Defendant, making the same request by letters rogatory, could not obtain. On this basis, he argues that 18 U.S.C. §§ 2251(c) and 2423 are unconstitutional. Setting aside that Defendant vastly understates the Philippine government's authority to deny an MLAT request—and hastily dismisses the potential efficacy of the letters rogatory requests that he has not made—Defendant is simply wrong: The availability of the MLAT, as opposed to the letters rogatory process, does not render Sections 2251(c) and 2423 unconstitutional. For good reason, no court has ever held that it does. Indeed, following Defendant's line of reasoning, if inequality in

the mechanisms for gathering evidence rendered a criminal statute facially invalid, it is difficult to imagine what criminal statutes would survive.  Defendants could almost universally complain that the United State's ability to obtain search warrants, or compel witnesses before the grand jury, or initiate wire taps, or build working relationships with state and local law enforcement, places them at a disadvantage in gathering evidence.  While it is undoubtedly true that such imbalances exist, their existence does not render federal criminal statutes unconstitutional.  *See United States v. Turkish*, 623 F.2d 769, 774 (2d Cir. 1980) (the notion that fairness requires "equalizing the powers of the prosecution and the defense" is "entirely unpersuasive").

      Rather, the unavailability of the MLAT to a defendant undermines neither his constitutional rights nor the general fairness of the criminal justice system.  An MLAT is simply a mechanism designed to facilitate the efforts of the United States in gathering evidence from a foreign country.  As such, an MLAT is neutral with regard to a defendant's constitutional rights; it neither guarantees nor subverts them.  Moreover, although a defendant may not use an MLAT to seek or secure evidence from a foreign jurisdiction, the does not prevent or preclude a defendant from foreign evidence-gathering through other avenues.  *See* 28 U.S.C. § 1781(a)(2), (b)(2) (transmittal of letter rogatory or request).  That other options may be less convenient or direct for a defendant than an MLAT would be does not constitute a denial of constitutional rights.

      The Fifth Amendment's due process clause requires that a defendant be treated with fundamental fairness.  But, in order to find a due process violation, "the acts complained of must be of such quality as necessarily prevents a fair trial."  *United States v. Valenzuela-Bernal,* 458 U.S. 858, 872 (1982) (citation omitted).  The test for a due process violation is whether: (1) the government acted in bad faith; and (2) the government's action resulted in prejudice to the defendant's case.  *United States v. Dring*, 930 F.2d 687, 693 (9th Cir. 1991).  Here, Defendant has made no attempt to satisfy these prongs, nor can he.  Inequality of position constitutes neither the government's bad faith nor a due process violation.  Inequality in terms of access to

procedural devices is inherent in an MLAT, but MLATs do nothing to inhibit private parties, such as Defendant, from using other means to secure evidence from foreign countries. *See Yousef*, 327 F.3d 112-13.

Similarly, for the reasons discussed above, Defendant's inability to seek evidence or testimony through an MLAT does nothing to impinge on his Sixth Amendment rights. *See supra* note 4.

### C. Defendant's Rights Could Be Further Protected Through the Use of Rule 15 Depositions.

Defendant next claims that a constitutional deprivation would attend his use of Rule 15 depositions of foreign witnesses. He states that because, *inter alia*, "defense counsel would be unable to adequately confront government witnesses who are coloring their testimony out of fear of adverse repercussions from foreign officials," his rights can only be protected through the live testimony of (presently unnamed) witnesses that, to date, Defendant has done nothing to formally summon. (Doc. 36, pg. 11). But Defendant offers no basis for his fears[5] and fails to address the multitude of cases that have recognized the constitutionality of using Rule 15 to depose foreign witnesses. *See, e.g.*, *United States v. Medjuck*, 156 F.3d 916, 919 (9th Cir. 1998); *United States v. Gabrion*, 648 F.3d 307, 339 (6th Cir. 2011); *United States v. Abu Ali*, 528 F.3d 210, 240 (4th Cir. 2008); *United States v. McGowan*, 590 F.3d 446, 453 (7th Cir. 2009); *see also Crawford v. Washington*, 541 U.S. 36, 54 (2004). If and when Defendant identifies any foreign witnesses that—though favorable, material, vital, and relevant—are unavailable, he may seek to depose them in accordance with Rule 15.

---

[5] Defendant's "*Id.*" citations to *Maryland v. Craig*, 497 U.S. 836 (1990) to support his fear-of-repercussions claim, and his subsequent claim that Rule 15 depositions would violate his Fifth and Sixth Amendment rights, appear to be inadvertent errors. Though it is not clear what authority Defendant intended to cite, *Maryland v. Craig* supports neither proposition.

**D. Because Defendant Will Have Suffered No Constitutional Deprivation, No Special Jury Instruction is Appropriate.**

Finally, Defendant asks this Court to instruct the jury that, because Defendant has not enjoyed the benefit of a treaty with the Philippines, jurors should "take into account [his] disparate access to witnesses and evidence in considering the evidence in this case." (Doc. 36, pg. 13, lns. 15-21). Defendant is unable to cite a single authority in support of his extraordinary request. Indeed, no authority exists because—though he has not sought to avail himself of them—constitutionally sufficient means exist for Defendant to gather evidence and obtain witness testimony. Defendant is, thus, not in a markedly different position from other defendants whose criminal activity touched foreign soil. He may seek and obtain evidence and testimony through established, constitutionally sufficient means. That he has failed to do so does not justify the inaccurate and improper jury instruction that Defendant seeks.

## *Conclusion*

For these reasons, Defendant's motion should be denied in full and no additional jury instruction should be given.

Dated: February 10, 2014

Respectfully submitted,

ANDREW G. OOSTERBAAN
Chief
Child Exploitation & Obscenity Section
Criminal Division
U.S. Department of Justice

*/s/ Ravi Sinha*
RAVI SINHA
HERBRINA D. SANDERS
Trial Attorneys
Child Exploitation & Obscenity Section
Criminal Division
U.S. Department of Justice

*Attorneys for Plaintiff*
*United States of America*