1  EVAN A. JENNESS (SBN 136822)
   2115 Main Street
2  Santa Monica, California 90405
   Telephone:   (310) 399-3259
3  Facsimile:    (310) 392-9029
   evan@jennesslaw.com
4
   JEFFREY J. DOUGLAS (SBN 106922)
5  1717 4th Street, 3rd Floor
   Santa Monica, California 90401
6  Telephone:   (310) 576-3411
   Facsimile:    (310) 576-3408
7  jjdxxx1@gmail.com
8  Attorneys for Defendant
   WALTER WILLIAMS
9

10

11              UNITED STATES DISTRICT COURT

12             CENTRAL DISTRICT OF CALIFORNIA

13                  WESTERN DIVISION

14

15  UNITED STATES OF AMERICA,        )   CASE NO. CR 13-302-PSG
                                     )
16              Plaintiff,           )   WALTER WILLIAMS' MOTION
                                     )   *IN LIMINE* TO PRECLUDE
17         v.                        )   TESTIMONY BY UNTIMELY
                                     )   DISCLOSED GOVERNMENT
18  WALTER LEE WILLIAMS,             )   FORENSIC EXPERT
                                     )
19              Defendant.           )   Motion Date:    March 10, 2014
                                     )   Motion Time:    9:30 a.m.
20                                   )   Trial Date:     March 19, 2014
                                     )   Trial Time:     9:00 a.m.
21                                   )   Place:          880-Roybal
                                     )
22                                   )
                                     )
23  _____ )

24

25

26

27

28

**MOTION**

Walter Williams, through counsel, hereby moves, *in limine* to preclude any testimony at trial by government forensic expert James Fottrell on the ground that the prosecution has given untimely notice of its intent to present Mr. Fottrell as a witness and *still* has not disclosed the summary of expert testimony required by Rule 16(a)(1)(G) of the Federal Rules of Criminal Procedure with respect to Mr. Fottrell.

This motion is based on the accompanying memorandum of points and authorities and exhibits; all files and records in this case; and such further evidence and argument as may be presented by the defense in support of this motion.

Proposed orders, in the alternative, are submitted herewith.

Dated: March 3, 2014                    Respectfully submitted,


LAW OFFICES OF EVAN A. JENNESS


 /s/ Evan A. Jenness
EVAN A. JENNESS


JEFFREY J. DOUGLAS LAW OFFICES


  /s/ Jeffrey J. Douglas
JEFFREY J. DOUGLAS


Attorneys for Walter Williams

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.**

**INTRODUCTION**

This case has been pending for over eight months.  On June 25, 2013, the Court issued a trial order stating that counsel "shall comply promptly with discovery and notice pursuant to Rules . . . 16 of the Federal Rules of Criminal Procedure."[1]  Over three months ago, the defense specifically sought notice and disclosure of all expert materials from the prosecution.  Inexplicably, the prosecution waited until just three weeks before trial to first give notice of its intent to present at trial the expert testimony of James Fottrell, the Director of the High Technology Investigative Unit with the DOJ's Child Exploitation and Obscenity Section regarding highly complex computer forensics evidence.  As a member of the prosecutors' own unit at the DOJ - the Child Exploitation and Obscenity Section - since 2002, he clearly is someone who has been known to them throughout these proceedings.  No report, summary of findings, or summary of Mr. Fottrell's proffered testimony has yet been produced.

The untimely proffer of Mr. Fottrell as an expert at trial is highly prejudicial to the defense.  Throughout the pendency of this case, the prosecution has not proceeded as if the case would be tried based on any complex computer forensics analysis.  It now appears to have changed its position.  However, at this belated hour, the defense cannot adequately prepare to cross-examine Mr. Fottrell on the many highly-complex and technical topics proffered by the government, nor prepare for and present appropriate rebuttal testimony.

This belated notice and incomplete production of discovery are inconsistent with the prosecution's obligations and extremely prejudicial to the defense given the technical nature of the proffered testimony and the time-consuming nature of the preparations to address such testimony at trial.  Moreover, most of the proffered

---

[1]   *See* Criminal Motion And Trial Order [Docket No. 17] at ¶ B.

topics for Mr. Fottrell's testimony appear unhelpful to the jury, irrelevant and/or more prejudicial than probative. Accordingly, Mr. Fottrell's testimony should be excluded.

## II.

## ARGUMENT

**A.     The Untimely And Incomplete Disclosures Are Serious Discovery Violations, And it Would Be Highly Prejudicial to the Defense if Mr. Fottrell Were Permitted to Testify at Trial**

In a letter dated September 6, 2013, the prosecution indicated its intent to call FBI Special Agent Jeffrey Yesensky and "a Computer Analysis Response Team certified forensic examiner" as experts at trial, but explained that "the witnesses will be more in the nature of 'fact' witnesses explaining how they uncovered certain evidence, including child pornography, from said computers and computer disks." *See* Exh. A (letter from prosecution to defense counsel), at ¶ 11. Regarding the balance of the proffered testimony, the prosecution stated only the following:

> "These witnesses will be asked to explain their training and background, the nature of the examinations that they undertook of the provider and related media, and the methods and/or software used to assist them in the examinations."

*Id*. As to the credentials of the proffered experts, the prosecution twice stated, "CV will be provided." To this day, the referenced *curricula vitae* have not been produced.

In order to ensure the defense received adequate notice and an opportunity to sufficiently prepare for testimony by any prosecution experts at trial, on November 25, 2013, the defense specifically requested disclosure of, *inter alia*, the "conclusions and findings of any expert witness you may seek to call as a witness at trial, whether or not such expert has prepared a written report, and all disclosures required by Rule 16 of the Federal Rules of Criminal Procedure." *See* Exh. B (defense letter to prosecution), at ¶¶ 31-33.

On February 25, 2014 - just three weeks before trial, and eight months after

1  Professor Williams was arraigned and the Court ordered counsel to "comply promptly
2  with discovery and notice" rules - the prosecution first notified the defense of its
3  intent to call James Fottrell of the DOJ's Child Exploitation and Obscenity Section as
4  an expert witness at trial.  *See* Exh. C (letter from prosecution to defense counsel).[2]  A
5  lengthy *curriculum vitae* was also provided.  No report, or summary of findings by
6  Mr. Fottrell has ever been produced.  No excuse has been offered for the failure to
7  provide a timely and complete notice.

8         Th prosecution's belated and incomplete notice of expert testimony is a patent
9  violation of its discovery obligations, and is highly prejudicial to the defense.  At this
10  late date, the defense could not possibly adequately prepare to examine Mr. Fottrell at
11  trial.  The proffered subjects for Mr. Fottrell's testimony are *extremely* technical and
12  vastly broader than what is described in the prosecution's September 6, 2013 letter.
13  Specifically, in contrast to the relatively simple proffered testimony of SA Yesensky
14  and a CART examiner described in the prosecution's September 6, 2013 letter, in its
15  February 25, 2014 notice, the prosecution states that Mr. Fottrell "may offer expert
16  opinion regarding" the following:

17  "•    Processes and practices through which computer forensic
18         examinations are conducted, including the use computer
19         forensics software (sic);
20  •    Attributes and organization of the image files charged in Count 1 of the
21         Indictment, including file structures, file organization, file contents,
22         file-naming conventions, file metadata (including Exif data) and any
23         forensically significant connections between files;
24  •    Attributes and organization of uncharged images and files (such as
25         uncharged child pornography, non-pornographic images, and

26

27         [2]    On February 12, 2014, one of the prosecutors orally stated that forensic
28  expert James Fottress (sic, according to defense counsel's notes) "may" be called as a
    government witness at trial.  No further information was provided.

user-generated word processing documents) found on the seized computer media, including file structures, file organization, file contents, file-naming conventions, file metadata (including Exif data) and any forensically significant connections between files;

• Automated computer processes and Windows-based file artifacts, including registry files and thumbs.db files, as well as the contents of such files;

• Processes generation and transfer of user-created files on digital cameras and Windows-based computers;

• File artifacts and metadata regarding file creation and transfer between media devices;

• Generation and reliability of timestamp signatures for files, including created-on, last-modified and last-accessed dates, as well as reasons for timestamp irregularities."

*See* Exh. C.

The defense cannot effectively evaluate and be prepared to address these highly complex, and technical issues within the short period of time remaining before trial.  Patently the defense cannot investigate Mr. Fottrell's credentials and timely present any appropriate *Daubert* motion - the motions filing deadline was February 3, 2014 - three weeks before the prosecution first gave notice of Mr. Fottrell's proffered testimony!

Further, as detailed in Walter Williams' pending Motion for Discovery [Docket No. 35], the defense *still* has not had an opportunity to review the entirety of the seized computer evidence.  Although this may occur this week, the type of comprehensive defense analysis necessary to rebut the complex and highly technical proffered testimony of Mr. Fottrell could never be completed in the short window remaining before trial.  Such an analysis is particularly time-consuming not only because of the nature of the analysis, but also because the computer evidence cannot

1 be removed from the FBI's offices. Accordingly, a defense expert must conduct any

2 examination at the FBI's offices. Any information from Professor Williams that

3 might be needed during the course of the analysis also would be time-consuming to

4 obtain because he is detained and not permitted communications by telephone or

5 email. Finally, preparing a defense expert to offer any appropriate rebuttal testimony

6 regarding the type of complex testimony contemplated by Mr. Fottrell also cannot be

7 completed within the brief window remaining before trial. All of these things would

8 have been well-known to the prosecution. Accordingly, the failure to give timely

9 notice is particularly perplexing.

10    Finally, the prosecution *still* has not provided the summary of expert

11 testimony required by Rule 16(a)(1)(G). The lengthy enumeration of *topics* on which

12 Mr. Fottrell "may" testify does not include any findings or conclusions of Mr. Fottrell,

13 or a summary of what he in fact would say if permitted to testify at trial.

14 **B.    This Court's Intervention is Warranted to Protect the Defense From**

15 **Having to Defend Against Evidence of Which it Has Not Been Given Fair**

16 **Notice**

17    The voluminous discovery materials produced in this case have nothing to do

18 with the kind of complex computer forensics analysis that are the proffered topics of

19 Mr. Fottrell's testimony. The Forensic Toolkit or FTK Reports of the government's

20 review of seized computers that the prosecution has showed to the defense consist of

21 images and a small number of other documents culled from the seized computers

22 using software intended to selectively identify particular types of images or

23 documents.[3] Complex computer forensics matters were mentioned *nowhere* in any

24 case-related materials until the prosecution's February 24, 2014 letter. This is the first

25 time - three weeks before trial – that the prosecution has given notice of its intent to

26 present complex computer forensic evidence at trial, including such arcane things as

27 _____

28    [3]    A "Forensic Tool Kit" or "FTK" report consists of the fruits of an
automated search of a computer hard drive for materials responsive to specific criteria.

"file-naming conventions, file metadata (including Exif data) and any forensically significant connections between files . . . [a]utomated computer processes and Windows-based file artifacts, including registry files and thumbs.db files . . . . reliability of timestamp signatures," *etc. etc.*  This came as great surprise to the defense given the simplicity of the proffered expert testimony in the prosecution's September 6, 2013 letter.

For the past 8+ months, the prosecution has not proceeded as if this case would be tried based on computer forensics.  Here, on the eve of trial, it appears to have changed its position.  This Court's intervention is needed to prevent substantial prejudice to the defense as a consequence of this apparent change in tactics.

**C.    Most of the Proffered Testimony Appears Unhelpful to the Jury, Irrelevant And/Or More Prejudicial Than Probative**

Much of the proffered testimony appears unhelpful to the jury and potentially very confusing given its arcane nature.  When SA Yesensky interviewed various witnesses in the Philippines, he showed them images that he and/or the CART technician allegedly obtained from devices seized from Professor Williams by SA Yesensky at LAX in 2011.  This includes the eight images charged in Count 1 of the indictment.[4]  The witnesses reviewed the images and identified themselves and/or others in them (or in some cases failed to recognize the images).  None of the proffered testimony appears necessary for this type of evidence to be presented at trial.

Much of the proffered testimony appears entirely irrelevant.  The prosecution's February 24, 2014 letter references for the first time introducing expert testimony regarding the "computer media obtained from the ONE National Gay & Lesbian Archives at the University of Southern California."  Such materials are remote in time, and unrelated to Professor Williams' trip to the Philippines that gave

---

[4]    The eight images charged in Count 1 are not specified in the Count, but have been set forth in the prosecution's letter responding to the defense's Motion for a Bill of Particulars [Docket 33], which is attached as Exhibit A to the Notice of Withdrawal of Walter Williams' Motion For a Bill of Particulars [Docket 58].

rise to the charges in this case.  They also are unrelated to the images charged in Count 1 of the indictment, or the alleged victims in Counts 1, 3 and 4 (JM and AC).

During proceedings today, the Court granted the defense's request to exclude at trial evidence of "Conduct in Southeast Asia, other than the Republic of the Philippines."  *See* Motion *In Limine* to Preclude Items From Evidence Pursuant to Rules 402, 403 and 404(b), *Etc.* (sealed), at Part III(F).  The computer media obtained from the ONE National Gay & Lesbian Archives at USC are even less relevant to this case.  Accordingly any expert testimony regarding these materials would be irrelevant, and highly prejudicial to the extent that it includes claimed child pornography.

Similarly, the prosecution seeks to present testimony by Mr. Fottrell about "uncharged child pornography, non-pornographic images, and user-generated word processing documents."  *See* Exh. C.  Uncharged child pornography is irrelevant to the charges and any probative value would be substantially outweighed by unfair prejudice, as set forth in the defense's Motion *In Limine* To Preclude Items From Evidence Pursuant to Rules 402, 403 and 404(b) [filed under seal on February 3, 2014].[5]  Non-pornographic images are, of course, First Amendment protected, and the Court has already ruled that the prosecution may not introduce photographic evidence of sexual conduct with adults.  The significance of any "user-generated word processing documents" is entirely unclear because the "summary" mandated by Rule 16 is absent from the untimely notice.  At this late stage, all of this evidence should be excluded based on the prosecution's lapses.

---

[5]      At March 3, 2014 proceedings, the Court deferred until March 10, 2014, consideration of the topic of sexual conduct with anyone other than the alleged victims designated by their initials in the Indictment.

1

**III.**

2

**CONCLUSION**

3     For the reasons stated herein, testimony by government computer forensic

4 expert James Fottrell should be precluded at trial.

5

Dated: March 3, 2014                          Respectfully submitted,

6
                                              LAW OFFICES OF EVAN A. JENNESS
7

8                                               /s/ Evan A. Jenness
                                              EVAN A. JENNESS
9

10                                            JEFFREY J. DOUGLAS LAW OFFICES

11
                                                /s/ Jeffrey J. Douglas
12                                            JEFFREY J. DOUGLAS

13
                                              Attorneys for Walter Williams
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**EXHIBIT A**



**U. S. Department of Justice**
**Criminal Division**

*Herbrina D. Sanders*
*Child Exploitation & Obscenity Section*
*Trial Attorney*
*(office) (202) 616-1951*
*(fax) (202) 514-1792*
*herbrina.sanders@usdoj.gov*

*1400 New York Avenue, NW*
*Suite 600*
*Washington, DC 20005*

September 6, 2013

**SENT VIA FEDEX**
**SIGNATURE REQUIRED**

Mr. Alexander Griggs
2785 Pacific Coast Highway, Suite 298
Torrance, California 90505

Re:     United States v. Walter Lee Williams
         NO. CR 13–00302-PSG

Dear Mr. Griggs:

         Pursuant to your request and the Court's order, please find on two enclosed discs the
Defendant's statement and discovery documents with pages numbered 1-805 including:

1.     Defendant's Statement: On February 11, 2011, the Defendant gave a statement to
        FBI agents that was audio recorded.

2.     Defendant's Criminal History and Biographical Information:  California
Department of Motor Vehicle, Lexis Nexis and NCIC Reports for Defendant;
Defendant biographical information; Defendant travel information and history.

3.     Buddist Universal Association Information: history of organization and email
        exchanges.

4.     Law Enforcement Reports, Photographs and Documentary Evidence:  Los
        Angeles Police Investigative File; Federal Bureau of Investigation initial receipt
        report; Photographs and property receipts of items seized from Defendant at Los
        Angeles International Airport on February 11, 2011; Gender questionnaires
        recovered from Defendant's seized electronics.

5.     Federal Grand Jury Subpoenas and Returns: Moneygram; University of Southern
        California; Asiana Airlines; US Bank; Western Union; Bank of America; USAA;
        Xoom.

6.   Search Warrants: 5/19/11; 7/11/11.

7.   Yahoo! Preservation Letters.

8.   Brady/Giglio/Henthorn Material: The United States will comply with all discovery
requirements if and when any applicable material is discerned and obtained.
*Brady v. Maryland,* 373 U.S. 83 (1963).  *Giglio v. U.S.,* 405 U.S. 150 (1972).  *U.S.
v. Henthorn,* 931 F.2d 29 (9th Cir. 1991).

9.   Evidence Seized:  At any mutually acceptable time, you may inspect or inspect
and copy or photograph books, papers, documents, data, photographs, tangible
objects which are material to preparing the defense; the United States presently
intends to use in its case-in-chief at trial; or were obtained from or belong to the
Defendant.  These items include computer files containing still images of minors
engaged in sexually explicit conduct (which cannot be provided) and tangible
objects recovered from the Defendant, including but not limited to photos of his
seized electronics and office space.

10.  Examinations: The Defendant's electronic equipment was seized at the airport and
forensically examined.  Some of the results of this examination contain sexually
explicit images of children and can not be provided.  However, the evidence may
be viewed as often as needed by making timely arrangements with our office and
the FBI.

11.  Experts:  The following is a summary of expert testimony the United States
presently intends to offer in its case-in-chief, including the expert opinions, bases
and reasons for those opinions, and qualifications:
        Federal Bureau of Investigation Special Agent Jeffrey Yesensky (CV will
be provided) performed the forensic examination on the Defendant's computers
and electronic equipment with the assistance of a Computer Analysis Response
Team certified forensic examiner (name and CV will be provided).  This evidence
was seized pursuant to a federal search warrant obtained during this investigation.
The Government believes that the agent's and the examiner's testimony will
involve technical and specialized knowledge regarding the examination of
computers pursuant to Rule 702 of the Federal Rules of Evidence.  These witnesses
will be asked to explain their training and background, the nature of the
examinations that they undertook of the provider and related media, and the
methods and/or software used to assist them in the examinations.  Thus, the
witnesses will be more in the nature of "fact" witnesses explaining how they
uncovered certain evidence, including child pornography, from said computers and
computer disks. The Government is prepared to present the evidence pursuant to
the dictates of the Supreme Court in Daubert v. Merrell Dow Pharmaceuticals, Inc.,
509 U.S. 579 (1993) and Kumho Tire Company, Ltd. v. Carmichael, 526 U.S. 137
(1999).

* * *

12.   Fed. R. Evid. 404(b):  The general nature of evidence of other crimes, wrongs, or acts which the United States intends to introduce in its case-in-chief at trial pursuant to Federal Rule of Evidence 404(b) is as follows:  (a) evidence that the Defendant received, or attempted to receive, and possessed images of child erotica; (b) evidence that the Defendant solicited images of child pornography via the internet; and (c) evidence that the Defendant engaged in sex acts with minors that are not charged in this case.

This evidence is available for your review by making mutually convenient arrangements with this office. ***Please Note*** -Since the investigation is not complete, the Government has not determined precisely what other prior "bad acts" evidence it may seek to introduce. Once the Government determines what other "bad act" evidence it will seek to introduce, it will notify you.

13.   Jencks Material:  The Government will produce to you any Jencks material – including any relevant grand jury transcripts, assuming a Rule 6(e) order has been issued – one week before trial if you agree to the production of reciprocal Jencks material at that time or affirmatively represent that you have no Jencks material to produce.  Please inform me whether such an arrangement is acceptable to you.  18 U.S.C. § 3500.

The United States intends to use all the items listed above at trial.  Much of this evidence was recovered pursuant to federal search warrants.  Copies of the warrants issued pursuant to the Defendant's investigation and the application and affidavit in support are provided.  A more complete list of the Government's trial exhibits will be provided.  However, the Government will permit you to view any evidence in its possession by making timely arrangements.

The enclosed materials and any future discovery provided to you that may exceed the scope of discovery mandated by the Federal Rules of Criminal Procedure, federal statute or relevant case law are provided voluntarily and solely as a matter of discretion. By producing such materials to you, the Government does not waive its right to object to any future discovery requests beyond the ambit of its legal obligations.

With this letter the Government requests all reciprocal discovery to which it is entitled under Rules 16(b) and 26.2 of the Federal Rules of Criminal Procedure including:

1.   Books, papers, documents, photographs, tangible objects, and building or places, or copies of portions of any of those items, which are within the Defendant's possession, custody, or control, and which the Defendant intends to use in the Defendant's case-in-chief at trial;

2.   The results or reports of any physical or mental examinations and of any scientific tests of experiments which are within the Defendant's possession, custody, or control, and which the Defendant intends to use in the Defendant's case-in-chief at trial or intends to call the witness who prepared the report and the report relate to the witnesses' testimony; and

3.   A written summary of any testimony that the Defendant intends to use under Federal Rules of Evidence 702, 703, or 705 as evidence at trial describing the witness's opinions, the bases and reasons for those opinions, and the witness's

3

qualifications.

The Government also requests notice of any intention of the Defendant to rely on an entrapment defense, or a defense involving mental condition or duress, and/or an alibi defense. Pursuant to Federal Rule of Criminal Procedure 12.1, the dates, times, and places of the offenses are detailed within the documents included within the discovery. The Government requests the specific place where the Defendant claims to have been at the time and the name, address, and telephone number of each witness on whom the Defendant intends to rely. Please contact me immediately if you believe that this notice is insufficient.

Please let me know if you have any questions, or would like to further discuss any of the matters raised above.

Very truly yours,

ANDREW G. OOSTERBAAN
Chief, Child Exploitation & Obscenity Section
Criminal Division

HERBRINA D. SANDERS
RAVI SINHA
Trial Attorneys, Child Exploitation & Obscenity Section
Criminal Division

Enclosures

4

**EXHIBIT B**

# LAW OFFICES OF EVAN A. JENNESS

**MAIN STREET LAW BUILDING**
**2115 MAIN STREET**
**SANTA MONICA, CALIFORNIA 90405**
**TEL. (310) 399-3259 FAX (310) 392-9029**
**EVAN@JENNESSLAW.COM**

November 25, 2013

Herbrina Delores Sanders, Trial Attorney
Herbrina.sanders@usdoj.gov

Ravi Sinha, Trial Attorney
Ravi.Sinha@usdoj.gov

Re:  *United States v. Williams*,13-cr-0302-PSG

Dear Counsel:

Following up on our communications regarding discovery, I am writing to formally request the production of all discovery on behalf of my and Jeffrey Douglas's client, Walter Williams.

Discovery is requested pursuant to Rule 16 of the Federal Rules of Criminal Procedure, Title 18 U.S.C. § 3500, and other applicable statutory authorities and case law, including *Brady v. Maryland*, 373 U.S. 83 (1963), *United States v. Giglio*, 405 U.S. 150 (1982), and the authorities cited in the accompanying discovery request.  Please let us know if you *decline to produce* any of the materials specifically requested, and when you may be available for a meet and confer regarding any such materials, so that we may attempt to informally resolve any differences.

Format of Discovery

We are amenable to receiving discovery materials in electronic format where feasible. However, it is our position that the format must be produced in an electronic format that is reasonably accessible to us.  With respect to materials obtained by the government in electronic format, we request that they be produced in native format, including all metadata.

Hebrina Delores Sanders, Trial Attorney
Ravi Sinha, Trial Attorney
November 25 , 2013
Page 2

Electronic Communications

Please let us know if you have a policy or practice of treating email differently from other forms of discovery, or decline to review for discovery purposes all substantive case-related communications contained in any email. *See* Deputy Atty. Gen'l Ogden, Memo for Department Prosecutors (January 4, 2010) ("Ogden Discovery Memo") ("the format of the information does not determine whether it is discoverable").

Handwritten Notes

The Ninth Circuit has made clear in *United States v. Kohring*, 637 F.3d 895 (2011) (reversing conviction based on *Brady/Giglio* violations where prosecutors failed to disclose materials, including handwritten notes of FBI interviews of witnesses, which were relevant to cross-examination), that handwritten notes must be treated no differently from other materials.

It is our position that handwritten notes are producible regardless of whether or not a typewritten memorandum has been created regarding the notes.  Please let us know if you disagree with our position, so that the issue can be presented to the Court for adjudication if necessary.

Forensic Evidence

With respect to hardware and other electronic devices seized in the course of the investigation of this matter (including, without limitation, those itemized in the forfeiture allegation of the indictment and/or obtained from Mr. Williams's former office at the University of Southern California) we look forward to discussing a suitable arrangement by which the original evidence may be made available for testing by a defense expert.  A suggested protective order accompanies my November 15, 2013 email.

Protected Materials

Following up on our email communications and my conversation with Ravi Sinha earlier today, we look forward to receiving your revised proposed stipulation regarding the production of potentially protected materials, and will get back to you promptly after reviewing it.

Hebrina Delores Sanders, Trial Attorney
Ravi Sinha, Trial Attorney
November 25 , 2013
Page 3

We look forward to speaking further, with a view towards expediting discovery.  Feel free to call or text my cell phone (310.880.2068) to reach me during non-business hours.

Please advise if you would like a hard copy of this letter.  Feel free to conserve the environment by using electronic communications with us where feasible.

Very truly yours,

//ss//

EVAN A. JENNESS

EAJ:dfm

Enclosure

cc:     Jeffrey Douglas, Esq. (w/encl.)

## REQUESTS FOR DISCOVERY

This request encompasses information both within the possession of federal agents and administrative and regulatory agencies, and within the possession of state, local and quasi-governmental agents, agencies and offices with whom you and/or your agents have worked in the course of your investigation of this matter.  It also encompasses materials in the possession of any foreign agents or agencies working with you and/or the case agents regarding this case.

As you undoubtedly are aware, *Brady* material is in the possession of the government even when it is held by any another agency which has been involved in the investigation.[1] Prosecutors have a "personal duty to become aware of, and disclose, material exculpatory information."  *United States v. Alvarez*, 86 F.3d 901, 904 (9th Cir. 1996); *United States v. Bryan*, 868 F.2d 1032, 1036 (9th Cir.) ("The prosecutor will be deemed to have knowledge of and access to anything in the possession, custody or control of any federal agency participating in the same investigation of the defendant."), *cert. denied*, 493 U.S. 858 (1989); *United States v. Shakur*, 543 F. Supp. 1059, 1060 (S.D.N.Y. 1982) (USAO must produce all *Brady* material uncovered by local prosecutors because of the "cooperative activity" between the two offices); *see also Kyles v. Whitley*, 514 U.S. 419 (1995) ("individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case" ).

Pursuant to *Commonwealth v. Bowie*, 243 F.3d 1109 (9th Cir. 2001), we are requesting that you take an active role in investigating information potentially bearing on the incredibility of potential prosecution witnesses, and/or the innocence of our client.  Please (a) make a specific inquiry of each of the various agents and agencies involved in this matter (federal, state, local and quasi-governmental, including law-enforcement as well as regulatory and/or administrative), and make them aware of the government's discovery obligations; and (b) ensure that *all* tangible evidence, email communications, agents' notes, documents,[2] and other discovery materials are preserved and produced.[3]  USAM § 905.001 ("It is the obligation of federal prosecutors . . . to seek all exculpatory and impeachment information from all members of the prosecution team. Members of the prosecution team include federal, state, and local law enforcement officers and other government officials participating in the investigation and prosecution of the criminal case against the defendant.").

We are specifically requesting the following:

1.      All reports or other documents prepared by or at the direction of federal, state, local,

---

[1]      *United States v. Wood*, 57 F.3d 733 (9th Cir. 1995); *United States v. Santiago*, 46 F.2d 885, 893 (9th Cir. 1995).

[2]      As used herein, the terms "documents" and "documentation" include, but are not limited to, information in written, recorded and/or electronic form.

[3]      *United States v. Jackson*, 780 F.2d 1305 (6th Cir. 1986); *United States v. Butler*, 567 F.2d 885, 889 (9th Cir. 1978).

plea negotiated.[14]

25.     For *in camera* review by the district court, any and all personnel files of all law enforcement witnesses who the prosecution intends to call at trial.[15]

26.     The Grand Jury transcripts of all testifying prosecution witnesses.

27.     Copies of all documents or other exhibits which may be introduced at trial by the prosecution.

28.     All photographs, photographic arrays or spreads, video surveillance and/or similar documents or materials, utilized to identify Mr. Williams and/or any other alleged or suspected perpetrators of the offenses charged in, or related to, the charges in this case.

29.     Regarding any witness identifications of any type conducted regarding this matter: (a) the name, address and telephone number of all persons present, (b) all statements regarding identification (whether an identification was made or not) made by any and all witnesses, (c) all photos, videos, documents identifying line-up participants, and other materials used for purposes of attempting to obtain any identification, and (d) all reports that refer to or reflect the preceding.

30.     Complete information regarding surveillance or undercover activities, including, but not limited to copies of all surveillance (video, audio, email, etc.); and the identity of all persons claimed: (a) to have been present during; (b) to have conducted surveillance of; and/or (c) to possess material information regarding, the offenses charged in this case.

31.     All forensic or scientific analyses or tests conducted with respect to the investigation of, and allegations in, the case.  This request includes, but is not limited to, forensic, fingerprint, and handwriting analyses, as well as all underlying data pertaining to all analyses or tests; (b) all examination or lab notes, and similar materials, regarding any analyses or tests relating to this matter; (c) access to all testing devices, machines and/or other implements used by any governmental agents (including those acting at their direction) with respect to any scientific analyses or tests pertaining to the allegations in this case; and (c) all protocols, guidelines, quality-control and or other standards required to be implemented with respect to all scientific analyses or tests conducted in this case.                                                                          **

32.     The conclusions and findings of any expert witness you may seek to call as a witness at trial, whether or not such expert has prepared a written report, and all disclosures required by

---

[14]     *Brown v. Dugger*, 831 F.2d 1547, 1555 (11th Cir. 1987) (Clark, J., concurring) (evidence that witness sought plea bargain is to be disclosed, even if no deal struck); *Haber v. Wainwright*, 756 F.2d 1520, 1524 (11th Cir. 1985).

[15]     *United States v. Henthorn*, 931 F.2d 29 (9th Cir. 1991); *United States v. Cadet*, 727 F.2d 1453 (9th Cir. 1984).

Rule 16 of the Federal Rules of Criminal Procedure.

33.     For all experts you may seek to call as witnesses at trial,[16] please provide (a) accreditation (all licenses or other certificates of accreditation held by the expert and the lab used by him or her regarding any testing conducted with respect to this matter); (b) resumes (at the time of any testing and current); (c) job description (at the time of any testing and current); (d) proficiency test results (at the time of any testing and current); and (e) all other materials upon which you would rely in seeking to present the testimony of the proffered expert pursuant *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993), and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999).

34.     All information which the government would seek to use as part of any sentencing calculations or proceedings in the event of any conviction, including factors relevant under 18 U.S.C § 3553 and any adjustments, departures or variances under the Federal Sentencing Guidelines.

        In addition to the preceding, in order that we may evaluate and prepare appropriate motions, the following is requested:

        (a)     Notice under Rule 12 of the Federal Rules of Criminal Procedure of your intention to use in your case-in-chief at trial any evidence which the defense may be entitled to discover under Rule 16; and

        (b)     Disclosure of all searches of persons or places that occurred during any phase of this case, and all evidence seized as a result of any search, either warrantless or with a warrant, in this case.  Fed. R. Crim. P. 16(a)(1)(C); *United States v. Bryan*, 868 F.2d 1032.

                (i)     Please provide the date and location of each search, the identity of all persons present, and a list of the items seized.

                (ii)    If a warrant was obtained, please provide a copy of it, as well as any affidavits submitted in support of the application for the warrant, and any search inventory or warrant returns.  Also provide arrest warrants and accompanying affidavits, if any.

        If you decline to disclose any of the materials requested above, please let us know so that we can meet and confer in an effort to resolve the matter informally.  If you have doubts as to the propriety of disclosure, please submit the materials to the Court for its review.  *United States v. Lehman*, 756 F.2d 725, 729 (9th Cir. 1985).  Also, any materials that you seek to produce in redacted form based on relevance or privilege issues should be submitted to the Court for its

---

[16]     *See, e.g., Crawford v. Washington*, 541 U.S. 36 (2004), *Melendez-Diaz v. Massachusetts*, 129 S. Ct. 2527 (2009).

**EXHIBIT C**



**U.S. Department of Justice**

Criminal Division

---

*Child Exploitation and Obscenity Section*

1400 New York Avenue, NW
Suite 600
Washington, DC 20530
(202)353-4698  FAX: (202) 514-1793

February 24, 2014

*Sent via email:*
Evan A. Jenness, Esq.
Main Street Law Building
2115 Main Street
Santa Monica, CA 90405
*Evan@jennesslaw.com*

      *Re:  United States v. Walter Lee Williams (CDCA Case No. CR 13-302-PSG)*

Dear Evan,

      In accordance with Rule 16 of the Federal Rules of Criminal Procedure, we provide this notice of our intent to use expert testimony from James Fottrell under Federal Rules of Evidence 702, 703, or 705.  Also, in accordance with Rule 16(b)(1)(C), we ask that you please disclose any Rule 702, 703 and/or 705 testimony that Mr. Williams intends to use as evidence at trial.

      Mr. Fottrell is the Director of the High Technology Investigative Unit with the Department of Justice, Child Exploitation and Obscenity Section, located in Washington, D.C.  He will testify about the results of the forensic examinations of computer media (including the digital camera and SD card) seized from Defendant Walter Lee Williams at the Los Angeles International Airport, as well as the computer media obtained from the ONE National Gay & Lesbian Archives at the University of Southern California (in total "the seized computer media").  He may testify about any files found on or created by the seized computer media, whether made by your client or others, and may offer expert opinion regarding:

- Processes and practices through which computer forensic examinations are conducted, including the use computer forensics software;

- Attributes and organization of the image files charged in Count 1 of the

Indictment, including file structures, file organization, file contents, file-naming conventions, file metadata (including Exif data) and any forensically significant connections between files;

- Attributes and organization of uncharged images and files (such as uncharged child pornography, non-pornographic images, and user-generated word-processing documents) found on the seized computer media, including file structures, file organization, file contents, file-naming conventions, file metadata (including Exif data) and any forensically significant connections between files;

- Automated computer processes and Windows-based file artifacts, including registry files and thumbs.db files, as well as the contents of such files;

- Processes generation and transfer of user-created files on digital cameras and Windows-based computers;

- File artifacts and metadata regarding file creation and transfer between media devices;

- Generation and reliability of timestamp signatures for files, including created-on, last-modified and last-accessed dates, as well as reasons for timestamp irregularities.

Mr. Fottrell's qualifications can be found in his Curriculum Vitae, which is attached. Please let me know if you have any questions or concerns.  You are, as always, welcome to contact me on my cell phone.

Sincerely,

Ravi Sinha
505-231-1307
Herbrina Sanders
202-230-0675

2

## James M. Fottrell

1400 New York Avenue N.W., 6th Floor
Washington, DC  20530
202-353-4721
James.M.Fottrell@usdoj.gov

_____

| | | |
|---|---|---|
| **Experience** | **Child Exploitation and Obscenity Section** | 2002 to Present |
| | **Criminal Division, U.S. Department of Justice** | Washington, DC |

As Director of the High Technology Investigative Unit (HTIU) within the section to investigate child exploitation and obscenity offenses.  Conduct forensic examinations of seized computers and storage media.  Supervise forensic examinations conducted by staff computer forensic specialists.  Provide expert testimony in federal, state, and foreign courts in the area of computer forensics and Internet investigations in child exploitation offenses.  Provide technical guidance to federal, state, and international law enforcement agencies in support of large scale child exploitation investigations of online organized offenders using various technologies including commercial web sites, forums, file servers, peer to peer software, instant messaging, and other emerging Internet technologies.  Conduct technical training for attorneys and investigators in computer forensics and the various methods used to distribute child pornography.  Manage all aspects of the HTIU Internet Investigation Network and Computer Forensics Network, including the Certification and Accreditation System Security Plan, budget, and training.

Operation Delego (Dreamboard) (2008-2012)
Provided critical investigative support for a highly organized online community of over 200 US members and several hundred international offenders.  Responsibilities included re-creating the web based forum in an off-line environment and working with investigators to capture and preserve critical evidence and present it at trial. Wrote and successfully deployed a novel 'Network Investigative Technique" used to identify individuals who use proxy servers and other anonymous tools to hide their identify online.

Operation Bulldog (2010-2011)
Provided extensive technical support and co-ordination in an international community of offenders who produced and shared images and videos of very young victims. Technical support included consolidating data from various web-based email service providers into a flexible, searchable, and consistent manner.

Operation Nest Egg (CacheBBS) (2008-2011)
Provided critical investigative support for a highly organized online community of over 200 US members and several hundred international offenders.  Responsibilities included re-creating the web based forum in an off-line environment and working with investigators to capture and preserve critical evidence and present it at trial

| | | |
|---|---|---|
| | **Customs Cybercrime Center** | 1997 - 2002 |
| | **U.S. Customs Service** | Fairfax, VA |

Under contract to the United States Customs Service, Office of Enforcement

Operation Artus (2002)
Provided a wide range of investigative support for an ongoing child exploitation case involving numerous subjects in the United States and in other countries. Responsible for setting up an Internet Relay Chat (IRC) client computer to help identify users based upon nicknames and screen aliases. Worked with agents and Internet Service Providers (ISPs) to identify individuals when traditional log records were not available.  Responsible for writing programs, automated scripts, and other tools to parse through large volumes of log records and to extract relevant information.

Operation Buccaneer (August 2000 – July 2002)
Responsibilities included establishing various Internet based online covert identities and standardize techniques for case agents and analysts while using the Internet. Implemented covert web servers, email servers, domain name servers, and other Internet based machines to establish an authentic Internet presence.  Worked with agents and United States Attorneys to establish procedures and policies for documenting online investigations including email messages, Internet Relay Chat (IRC) messages, and Web based content. Investigated and documented new and complex security mechanisms used to conceal participants' identity and location, including IRC servers, File Transfer Protocol (FTP) servers, and email encryption. Developed and implemented methods and techniques to identify and document illegal activity on the Internet. Provided technical expertise in archiving of information and backups of machines used for illegal activities including file servers, email servers, and other Internet based machines. Provided technical assistance to Assistant United States Attorneys in drafting Title III Wiretap orders for an Internet based electronic mail server. Worked with various technicians in the telecommunications industry to implement, process, and minimize captured messages on a Title III wiretap on a high speed network connection. Established policies and procedures to aide the forensic agents and analysts with the large volume of seized materials including materials from various systems including Microsoft Windows based systems and Unix system such as FreeBSD and Linux. Responsible for performing computer forensic examinations of seized material and extracting relevant material for case agents, analysts, and attorneys. Provided testimony in Central Criminal Court in the United Kingdom regarding my activities related to identifying four UK defendants.

Operation Cheshire Cat (1998 – 1999)
Provided a wide range of computer support that resulted in thirty-two (32) federal searches in twenty-two (22) federal districts. Computer support included coordination of identifying targets of investigation, search warrants and forensic work both domestically and abroad. Testified in Federal Court (San Diego, CA 1/21/00) regarding computer evidence and Internet Relay Chat.

Computer Forensic Laboratory Support
Process requests from field offices to conduct forensic examinations of seized computer evidence and system administration of existing computer operating system including Microsoft Windows NT, Microsoft Windows 98, Sun Solaris, SunOS, HP-UX, SCO Unix, Linux, FreeBSD Unix, and Macintosh. Extensive programming development experience using C/C++, Unix, and PERL. Proficient in use of forensic software including Guidance Software's Encase, Sydex Safeback, Access Data Forensic ForensicTool Kit, I-Look Investigator, ASR Expert Witness.

**Office of Enforcement**                                                      1989 - 1994
**U.S. Customs Service**                                              Washington, DC

As a project leader for the Office of Enforcement, responsibilities include managing a staff of ten consultants who provide support in the following areas:  systems administration, computer forensics, database design and implementation, user support and training, and support for the IBM mainframe systems.

Systems administration responsibilities include adding and removing users from the system, daily, weekly and monthly backups to off-site storage, system tuning and optimization, security reviews, and networking between AT&T 3B2's, Pyramid 90x, and Novell and Banyan networks.  Other duties include terminal, printer, and modem administration. Configured an OS/2 LAN Manager network to provide connectivity to several IBM mainframes for file transfers and 3270 terminal emulation. Installed a custom-built software package under OS/2 Presentation Manager to automatically convert mainframe data into an R:Base application.

Operation Longarm (1992)
Traveled to Denmark to work with Danish authorities in analyzing seized computer "BAMSE Bulletin Board System (BBS)". Organized evidence and identified worldwide members including thirty-four (34) U.S. citizens. Provided training and support for Customs agents responsible for seizing and analyzing computer evidence.

| | | |
|---|---|---|
| **Education** | **State University of New York, College at Oswego** | 1985 |
| | B.A. Computer Science, Minor: Mathematics | Oswego, NY |
| | **Microsoft Certified Systems Engineer** | 1996 |
| | **Encase Forensic Training** | 1999 |

**Activities**   High Technology Crime Investigation Association, Mid-Atlantic Chapter, 2005.
International Association of Computer Investigative Specialists, 1993.

**Awards**   Excellence in Law Enforcement, Immigration and Customs Enforcement, 2012
Attorney General's Distinguished Service Award, 2009
Assistant Attorney General's Award for Distinguished Service, 2011, 2009
Assistant Attorney General's Award for Outstanding Advocacy in Protecting Citizens from Online Crime. 2008, 2006
Attorney General's Award for Excellence in Information Technology, 2005
Certificate of Commendation, U.S. Department of Justice, Criminal Division, 2004
Exceptional Service in the Public Interest Award, Federal Bureau of Investigation, 2004
Special Achievement Award, U.S. Department of Justice, Criminal Division, 2003, 2004
Letter of Commendation, Attorney General's Award, U.S. Department. of Justice, 1999

**Publications**

*Making a Child Exploitation Case with Computer Forensics*, U.S. ATTORNEYS' BULLETIN, Vol. 52, No. 2, Mar. 2004, at 24, with Michelle Morgan-Kelly.

**Selected Presentations**

*Mobile Device Investigation and Prosecution,* U.S. Department of Justice National Advocacy Center, Columbia, SC, Feb. 2013.

*Emerging Trends in Online Child Pornography Groups,* Dallas Crimes Against Children Conference, Dallas, TX, August 2012

*Countering* Anonymization–Investigative, Forensic, and Legal Issues, Law Enforcement Training on Child Exploitation, Atlanta, GA, April 2012

Offenders and Technology, United States Sentencing Commission, Washington, DC, November 2011

*Fade to Black: Anonymizing Tools and Techniques Used by Offenders*, Dallas Crimes Against Children Conference, Dallas, Texas, August 2010.

*Who Did It? Pinning Down the Offender*, Dallas Crimes Against Children Conference, Dallas, Texas, Aug. 2008.

*Understanding Forensic Exams and Their Capacity to Build a Case*, National Project Safe Childhood Conference, St. Louis, Missouri, Dec. 2007.

*Working with Digital Evidence: Advanced Computer Forensics*, National Internet Crimes Against Children Conference, San Diego, California, Oct. 2007.

*Creeping the Web for Online Sharing Communities*, Investigation and Prosecution Seminar,  U.S. Department of Justice National Advocacy Center, Columbia, SC, Jul. 2006.

*How the Internet is Misused by Pornographers*, Obscenity Investigation and Prosecution Seminar,   U.S. Department of Justice National Advocacy Center, Columbia, SC, Sep. 2005.

*Internet Investigations*, Obscenity Investigation and Prosecution Seminar,  U.S. Department of Justice National Advocacy Center, Columbia, SC, Sep. 2005.

*Computer Forensics*, Forensics for Prosecutors Seminar,   U.S. Department of Justice National Advocacy Center, Columbia, SC, Mar. 2005.

*Advanced Search and Seizure Issues: Peer to Peer Operations*, Advanced Child Exploitation Seminar, U.S. Department of Justice National Advocacy Center, Columbia, SC, Mar.2005.

*Fighting High Technology Crime: Effectively Combating a Hacker Defense*, Advanced Child Exploitation Seminar, U.S. Department of Justice National Advocacy Center, Columbia, SC, Mar. 2005.

*Effective Computer Forensic Examination: What a Prosecutor Needs to Know*, Fundamentals in the Prosecution of Child Exploitation Cases, U.S. Department of Justice National Advocacy Center, Columbia, SC, Aug. 2004.

**Court Testimony**
*U.S. v. Roger Loughry (2013)*
*U.S. v. John Wyss (2012)*
 *U.S. v. Billy Wade Carroll (2011)*
*U.S. v. Roger Loughry (2010)*
*U.S. v. Frank McCoy (2010)*
*U.S. v. Rudy Frabizio (2009)*
*U.S. v. Robert Merz (2009)*
*U.S. v. Richard Carino (2008)*
*U.S. v. Paul Little (2008)*
*U.S. v. Clason et al (2007)*
*U.S. v. Gregory Kapordelis (2007)*
*U.S.. v. Timothy Richards* (2006)
*U.S.. v. Donald Deverso* (2006)
*U.S.. v. Donald Anson* (2006)
*U.S.. v. Dwight Whorley* (2005)
*U.S. v. Michael Aaron O'Keefe* (2004)
*U.S. v. Richard Connors* (2003)
*U.S. v. Blazevich (1999)*
*U.S. v. Mohrbacher* (1997)
*U.S. v. Kimbrough* (1994)
*U.S. v. Lacy* (1994)
Central Criminal Court, United Kingdom, (2003, 2004)