1    UNITED STATES DISTRICT COURT

2    CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

3    HONORABLE PHILIP S. GUTIERREZ, U.S. DISTRICT JUDGE

4    – – –

5

6

7                                                  )
     UNITED STATES OF AMERICA,                     )
8                                                  )
                          PLAINTIFF,               )
9                                                  )
              vs.                                  ) No. CR13-302-PSG
10                                                 )
     WALTER LEE WILLIAMS,                          )
11                                                 )
                          DEFENDANT.               )
12   _____ )

13

14

15           REPORTER'S TRANSCRIPT OF PROCEEDINGS

16                LOS ANGELES, CALIFORNIA

17               MONDAY, APRIL 21, 2014

18                     1:30 P.M.

19

20

21

22   _____

23        CINDY L. NIRENBERG, CSR 5059, FCRR
              U.S. Official Court Reporter
24             255 East Temple Street
               Los Angeles, CA 90012
25              *www.msfedreporter.com*

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

```
1    APPEARANCES OF COUNSEL:

2

3    FOR THE PLAINTIFF:
                        U.S. DEPARTMENT OF JUSTICE
4                       CHILD EXPLOITATION AND OBCENITY SECTION
                        BY: RAVI SINHA,
5                           ASSISTANT U.S. ATTORNEY
                            HERBRINA DELORES SANDERS,
6                           ASSISTANT U.S. ATTORNEY
                        1400 NEW YORK AVENUE NW
7                       6TH FLOOR
                        WASHINGTON, DC 20005
8                       202-353-4698

9

10

11

12

13   FOR THE DEFENDANT:
                        LAW OFFICES OF EVAN A. JENNESS
14                      BY: EVAN A. JENNESS, ATTORNEY AT LAW
                        2115 MAIN STREET
15                      SANTA MONICA 90405
                        310-399-3259
16
                        LAW OFFICES OF JEFFREY J. DOUGLAS
17                      BY: JEFFREY J. DOUGLAS, ATTORNEY AT LAW
                        1717 4TH STREET
18                      3RD FLOOR
                        SANTA MONICA, CA 90401
19                      310-576-3411

20

21

22

23

24

25
```

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

```
 1              LOS ANGELES, CALIFORNIA; MONDAY, APRIL 21, 2014

 2                          1:30 P.M.

 3                          -  -  -  -  -

 4              THE CLERK:  Item Number 4, CR13-302, United States of

 5    America versus Walter Lee Williams.

 6              Counsel, please state your appearances.

 7              MR. SINHA:  Good afternoon, Your Honor.  Ravi Sinha

 8    and Herbrina Sanders on behalf of the United States.

 9              MS. JENNESS:  Good afternoon, Your Honor.  Evan

10    Jenness on behalf of Mr. Williams, who is present in custody.

11              Is it possible for his handcuffs to be removed?

12              THE COURT:  They may.

13              MS. JENNESS:  Thank you, Your Honor.  And I'm joined

14    by Jeffrey Douglas, who's also present.

15              THE COURT:  I have a couple of preliminary questions

16    first.  Yesterday the ex parte was filed to submit two

17    additional documents.

18              Ms. Jenness, I don't -- there was some delay in

19    filing the initial motion in the first place.  I'm not sure I

20    am following what the good cause is for a submission the Sunday

21    before a hearing submitting documents that you've had, from

22    what I can glean, prior to the response even being filed.

23              Can you articulate good cause?

24              MS. JENNESS:  Well, I'm not sure that I can

25    articulate good cause sufficient to satisfy the Court, but the
```

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

```
 1    reason -- the reason that they were filed so late was because I
 2    thought it would be better for the Court to know about them
 3    rather than not.  The allegation that was first made in the
 4    prosecution's reply brief regarding our supression motion that
 5    the computers -- that the HP computer --
 6            THE COURT:  That was in the response.  That was in
 7    the March 17th response.
 8            MS. JENNESS:  Correct.  And I was really --
 9            THE COURT:  March 27th response.
10            MS. JENNESS:  Yes, that's correct, Your Honor.  And I
11    was really floored by the allegation.
12            THE COURT:  Yeah, but now it's -- that's three weeks
13    later.  You filed a -- I mean, if you're floored, get up and
14    file these documents when you filed the response -- the reply
15    on April 7th, which included multiple exhibits that addressed
16    those documents.
17            So I just don't understand why it's submitted the
18    Sunday before a hearing when you've had -- you had the
19    documents when you did your April 7 response and you did, in
20    fact, respond to the arguments of abandonment and possessory of
21    ownership.
22            MS. JENNESS:  Your Honor is correct.  It could have
23    been done.  The only reason that it wasn't done was because it
24    first came to my attention over the weekend while I was
25    continuing my trial preparations.
```

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

```
 1          The second exhibit I think properly could have been
 2   made as an argument because the forfeiture allegation -- which
 3   is a piece of that exhibit simply attaching the statutes cited
 4   in the forfeiture allegation.  I could have argued from the
 5   existing record.  I thought it would be clearer for that to be
 6   presented to the Court as an exhibit.
 7          The first exhibit, Your Honor is correct.  That's not
 8   a part of the record already.  That's a stipulation that was
 9   e-mailed to me by counsel at the end of February.  So, yes,
10   Your Honor is correct; I did have that.
11          THE COURT:  Okay.  And then just so that we're clear,
12   the motion talks about the fruits of the computer and the
13   camera.  And I think everybody is on the same page.  We're
14   talking specifically about the Compaq Presario laptop, the HP
15   laptop, the Samsung digital camera, and although it's not
16   mentioned, you're also seeking supression of the 4 gigabyte
17   SanDisk memory card.
18          MS. JENNESS:  Yes, Your Honor.
19          THE COURT:  And I'm not sure how exhaustive the list
20   is.  When you speak of the fruits of these computers and memory
21   card and camera, is there a list somewhere that talks about
22   what items were taken from the computer's camera and memory
23   card, and then more specifically, what does the government
24   intend to use from those -- those fruits?
25          MS. JENNESS:  Your Honor, I think that the fruits in
```

 1   their entirety could be adjudicated.

 2          THE COURT:  I get you.  I'm not disagreeing with

 3   that.  The only question that comes up with -- is sometimes,

 4   for example, if I grant the motion, I probably need to know

 5   what the fruits -- I'm not suggesting that anyone would act

 6   improperly, but I'm saying all of a sudden an exhibit is

 7   introduced and someone says, "Wait a minute.  That was

 8   addressed in our motion to suppress," and I would have no way

 9   of knowing.

10          That's my -- my point is just in terms of

11   housekeeping down the road.  I don't disagree with you that

12   they can be addressed in total, either -- although maybe a

13   little later on I might have a question about that.  But

14   somewhere is there an inventory of what was taken from the

15   computers that can be provided to me?

16          MS. JENNESS:  There are many, many inventories.  You

17   know, my primary position would be that everything subsequently

18   flowed from the -- from what was taken off of the HP laptop.  I

19   think the parties would agree on a number of items being fruits

20   of the search.

21          THE COURT:  But I don't want that to be in flow.  I

22   want to know that today.  I want to know -- you said

23   "everything."  What does that mean?

24          MS. JENNESS:  Use the information on the laptop to go

25   to the Philippines to interview the witnesses, whose --

1        THE COURT:  That -- no, no.  You know what?  We're

2   going to cancel this hearing right now.

3        I want a list of what the fruit is.  I don't want to

4   argue three weeks from now that the fruit also included

5   something else.

6        So I want to stop right now because, frankly, I was

7   disturbed by, quote, the fruits.  I'm saying, "What is the

8   fruit," because I was worried about the management of the trial

9   and saying -- someone standing up, "Wait a minute.  This is the

10  subject matter of the motion."  How the heck do I know?  I

11  don't.  And now you're telling me, "Well, not only what's on

12  the computer, it relates to something else."  I don't even know

13  what you're talking about.  They (indicating) don't even know

14  what you're talking about.

15       So I don't want any moving targets here.  I want to

16  know before I start this motion what is the defense's position

17  with regard to what the fruits are.  So when can you tell me

18  what the fruits are as a finite list?  When will I know what

19  the fruits are?

20       MS. JENNESS:  I can articulate now my position on the

21  fruits.  I can't say with certainty the government would agree

22  with me.  I'm sure that there would be --

23       THE COURT:  Well, no.  I want to see it in writing so

24  I can see what the government agrees to.

25       See, this is the problem with motions that are

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

 1    brought late, ex parte the day before a hearing, and all of a

 2    sudden when I ask what the fruits are, there's going to be --

 3    this is exactly, Ms. Jenness, the problem that I wanted to

 4    avoid.

 5            You're exactly highlighting what I'm talking about,

 6    that somehow the litigants don't even know -- for you to say

 7    that the government doesn't even know what the fruits are, what

 8    am I going to do?  I think I've just checked the box, and I --

 9    and if I grant your motion to suppress, I've checked that box

10    as to what the fruits are.  Then on May 5th, I'm going to

11    litigate again what the fruits -- that the fruits not only

12    include what was on the computers, that the fruit includes

13    something else.  Why do I want to do that?

14            So that's why I was surprised.  When I see a motion

15    to suppress, quote, the fruits, I'm used to seeing what "the

16    fruits" is, not just generically the fruits.  I wasn't even

17    expecting what you were saying.  I was thinking more of just

18    managing the case and then saying, okay, a document comes up or

19    an exhibit comes up, and I say, "Well, I granted the motion,"

20    and someone says, "Wait a minute.  That was part of the

21    supression motion."  I don't know.

22            So when can you come up with what the fruits are?

23            MS. JENNESS:  As directed by the Court -- I mean, I

24    would certainly need a couple of days to go through all of the

25    discovery and specifically identify for the Court --

```
 1              THE COURT:  How much further do you plan to go
 2      besides just the inventory of the computer laptops and the --
 3              MS. JENNESS:  And the witnesses?  Because the
 4      witnesses, whose --
 5              THE COURT:  Do we need to re-brief this?
 6      Because then I've got something written; it's done, unless
 7      someone persuades my mind.  I've used these exhibits.  I've
 8      used -- which I even have questions about.
 9              So I don't know if you are going to raise new issues
10      as to what the fruits are and whether I need to write on that
11      as well.  So maybe we need to re-notice the motion so I can
12      know what the fruits are and reschedule and cancel the hundred
13      jurors again.
14              MS. JENNESS:  Your Honor, I will proceed as the Court
15      believes will be the most appropriate way to do it.
16              THE COURT:  The most appropriate is not to sandbag.
17      That's the appropriate way, to be ethical and not to sandbag.
18              MS. JENNESS:  I'm sorry, Your Honor.
19              THE COURT:  That's not -- I mean, ethical is not
20      submitting an ex parte the Sunday before.  Ethical is not all
21      of a sudden expanding the course of the motion when no one
22      knows -- what are you going to do?  Wave ha-ha May 5th and say,
23      "When you granted that motion, Judge, we also meant this," and
24      none of us -- if I hadn't asked the question and just proceeded
25      on the papers, would any of us know?
```

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1      MS. JENNESS:  Your Honor, if the prosecution had

2   raised any confusion about what the fruits were, I certainly

3   would have responded to it in my reply brief.

4      THE COURT:  Well, maybe they're not as smart as I am

5   in terms of managing a trial.

6      I want to manage a trial.  And I want to say, okay,

7   what is it -- and maybe you were banking on the fact that they

8   don't know what the fruits were.  I don't know.  But I was

9   saying to myself, "Well, okay, if I grant this motion to

10   suppress, what is it exactly that I have suppressed?"

11      And I agree with you if the motion includes the

12   straight inventories from the -- the Compaq Presario, the HP

13   laptop, the memory card and the camera, I agree a hundred

14   percent with you.  If that's all we're talking about as the

15   inventories, we can go forward today.  But, apparently, that's

16   not the case, and I think there has to be -- depending on

17   what's on that list, the government needs that opportunity to

18   respond as to what shouldn't be on that list.

19      Am I mistaken?

20      MR. SINHA:  No, Your Honor.  You're correct.

21      THE COURT:  Did you think it was going to include

22   something other than the inventories?

23      MR. SINHA:  I thought that it probably would include

24   the inventories of the computers.

25      THE REPORTER:  Microphone.

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

```
 1              MR. SINHA:  Excuse me.

 2              No, Your Honor.

 3              THE COURT:  Did you expect it was going to be other

 4     things other than the inventories?

 5              MR. SINHA:  I suspected that it was only going to be

 6     the inventories, Your Honor.

 7              THE COURT:  Okay.  So when can you get that -- what

 8     you were going to argue are the fruits?

 9              MS. JENNESS:  By Wednesday, Your Honor.

10              THE COURT:  Wednesday.  Okay.  So --

11              MS. JENNESS:  May I check my calendar, Your Honor?

12              THE COURT:  Sure.  Absolutely.

13              MS. JENNESS:  Your Honor, may I have until Friday?  I

14     have a client who is testifying in a matter on two, potentially

15     three days this week.

16              THE COURT:  Serve that on Friday.  Let's meet again

17     on Monday, and then the government will tell me -- and I'll see

18     what's presented on Friday, just to see what I think I will

19     need in terms of a chance to, if there's opposition from the

20     government -- and then to rewrite -- rewrite what I've written

21     already, not anticipating anything new.

22              But, anyway, so let's -- is that acceptable to the

23     government?

24              MR. SINHA:  Yes, Your Honor.

25              THE COURT:  Is that acceptable to the defense?
```

```
 1              We'll just -- you'll do that Friday.  We'll meet

 2   again on Monday to figure out where we're at --

 3              MS. JENNESS:  Yes, Your Honor.

 4              THE COURT:  -- with regard to the fruits.

 5              As it relates to standing, is the government going to

 6   request to cross-examine Mr. Williams as it relates to those

 7   brief paragraphs in the standing section?

 8              MR. SINHA:  Your Honor, the government would be happy

 9   to cross-examine Mr. Williams and would be happy to put on

10   testimony, were the Court to want an evidentiary hearing.

11              THE COURT:  Just understand me.  I think -- I mean,

12   the defendant has declared some things as it relates to

13   standing.  On that narrow issue, if you don't want to

14   cross-examine, that's fine.  I just am making an inquiry in

15   terms of timing.  Are you going to want to cross-examine on

16   that just brief issue of standing?

17              MR. SINHA:  Yes, Your Honor.

18              THE COURT:  Okay.  And then also there are -- with

19   regard to the use of all of the exhibits that were attached

20   either to the motion, the OM and the reply, there aren't any

21   objections to it, so I'm assuming everybody's -- and there

22   could have been, but the parties didn't.

23              And, in fact, for example, I thought Ms. Jenness

24   could have objected to foundation as it relates to some of the

25   e-mails or stuff from SC.  Ms. Jenness chose not to, but she,
```

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1    in fact, incorporated some of the documents that made your

2    arguments as to why these documents, in fact, showed what --

3    that they, in fact, did have a possessory interest in the

4    computer.  So I don't know --

5            MS. JENNESS:  I believe I did object in my reply

6    brief.

7            THE COURT:  Where?

8            MS. JENNESS:  I did point out that there were no

9    declarations or other foundation for the exhibits.

10           THE COURT:  Can you show me where?  Because I, of

11   course, read everything, but I may have missed it or it -- or

12   it had just come under the bleep because you also argued

13   that -- you know, you made a pitch that, you know, these

14   documents actually, in fact, support your position in some

15   respects.

16           MS. JENNESS:  Well, I did the best I could with them

17   because they were before the Court.

18           THE COURT:  Where's the objection to the -- can you

19   point that out to me in the response?

20           MS. JENNESS:  May I have one moment, Your Honor?

21           THE COURT:  Sure.

22       (Brief pause in the proceedings.)

23           MS. JENNESS:  Your Honor, with respect to the

24   records -- the arguments about USC and the ownership of the HP

25   laptop at page 22 --

```
 1              THE COURT:  One moment.

 2         Okay.  Lines?

 3              MS. JENNESS:  Lines 12 through 18.

 4              THE COURT:  Okay.  Anywhere else?

 5              MS. JENNESS:  At page 23, lines 6 through 7.

 6              THE COURT:  Six through --

 7              MS. JENNESS:  Six through 7.

 8              THE COURT:  Okay.

 9              MS. JENNESS:  At page 22, lines 5 through 8.

10         The defense sought an evidentiary hearing in the

11    event that the prosecution disputed our rendition of the facts.

12              THE COURT:  I mean, maybe I just missed it, but isn't

13    the reference to -- all right.  So I guess I can construe these

14    as objections, but it just seems to me when you're talking

15    about an evidentiary hearing, you're talking about weight, but

16    I see your point.

17              MS. JENNESS:  I think, Your Honor, it would have been

18    better presented as perhaps a separate brief lodging an

19    objection in their entirety to the exhibits to which we

20    objected.  I chose a different strategy, which was to argue

21    that we didn't accept that there was a foundation for these,

22    but if the Court were to admit them, our position is the

23    following.

24              THE COURT:  They helped you.

25              MS. JENNESS:  Well, they didn't.  I mean, they
```

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1   argued, for example, that the USC -- one of the two thick books

2   that they presented to the Court showed that the computer

3   belonged to Mr. Williams.  Well, I read through the book, and I

4   see how it only applies to property that's worth over $5,000,

5   so that was the sort of -- I guess I could have ahead of time

6   said we object to these exhibits.

7        THE COURT:  I guess I was focusing more on the

8   purchase order and the -- those -- I mean --

9        MS. JENNESS:  Well, the second booklet that they

10  provided, the computer-usage policy, that's dated 2010.  The

11  computer was bought in 2008.  So the relevance of that as an

12  exhibit in an evidentiary hearing, it would probably be

13  excluded as simply irrelevant.

14       So that was the kind of problem that I was confronted

15  with in responding to a brief that didn't have an evidentiary

16  basis for a lot of the facts that were being argued.

17       THE COURT:  All right.  And then the government on

18  that point?  Because the government just attached these

19  booklets and e-mails, or whatever they were, in there without

20  any type of declaration authenticating, laying a foundation to

21  what they were, and I was --

22       MR. SINHA:  So, Your Honor, insofar as defense has

23  objected to it, the United States can provide affidavits, if

24  the Court would like, or if the Court would like to hold an

25  evidentiary hearing, the United States could call witnesses to

1  verify the content and the authenticity of those documents --

2  or by affidavit, whatever the Court would like.

3           THE COURT:  Well, I want affidavits and then

4  cross-examination on the affidavits.

5           MS. JENNESS:  We would seek to cross-examine any

6  affiants, Your Honor.

7           THE COURT:  So get those affidavits by Friday and

8  we'll see where we're at next Monday.

9           MR. SINHA:  Thank you.

10          THE COURT:  So just going back, Ms. Jenness, to the

11 inventories, how I like to see that done is break down the

12 inventories as to, A, from the Compaq; B, from the HP laptop;

13 and, then, C, the camera, although I don't think there will

14 probably be any fruits from the camera.  There's just the

15 camera.  Where the fruits come from are the memory cards;

16 what's the inventory as to that.  And then label anything else

17 as the "other" aspects that you want to see withdrawn.

18          Because, frankly, as I was thinking about this

19 motion, I was thinking about, well, if I grant the motion to

20 suppress, the government could still prove up its case through

21 live witnesses, and so you're going to say maybe not, so -- all

22 right.  So I didn't -- when I -- do I envision -- I envisioned

23 this motion -- even if it was granted, it was not a game ender,

24 as some motions to suppress are.  Now that I hear this, you

25 may believe it's a game ender.  But I think we all should know

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

1   that before we proceed.

2           So aside from -- aside from the cross-examination on

3   standing, the cross-examination on authenticity, I did not

4   anticipate any other -- a need for any other evidentiary

5   matters.  Am I mistaken?  Did anyone think I'm mistaken as to

6   that?  Just as to the foundation as to the exhibits and

7   cross-examination on standing?  I didn't anticipate that I

8   needed anything else.

9           MS. JENNESS:  Your Honor, I believe that there would

10  be disputes on the issue of what constitutes a fruit.  I'm

11  going to guess that --

12          THE COURT:  First, let's see what it is.

13          MS. JENNESS:  Very well.

14          THE COURT:  And then on Monday, the government will

15  tell me, "Well, this whole other category shouldn't be there."

16  So I think that's -- once you tee up what the fruits are, then

17  we can have that discussion as to how and why we disagree as to

18  what the fruits are.

19          I don't think anyone is going to disagree about the

20  A, B, C and D.  It's that "other" category that I think there's

21  going to be a dispute.  No one's going to dispute if I -- I

22  thought generically we could do the computer and camera and

23  memory cards.  No one is going to dispute that, if I grant the

24  motion that whatever was on the computer, whatever was on the

25  memory card is gone.  But I think where you are going to get

```
 1    the dispute is as to this "other" category.

 2          MS. JENNESS:  Let me just -- just to make sure that I

 3    understand the Court, if, for example, an individual witness's

 4    image was on the HP laptop and that image was suppressed, and

 5    the government used that image to identify where the person was

 6    from and to go and interview that person, would the person's

 7    interview, in Your Honor's view, be under the category of the

 8    HP laptop or under --

 9          THE COURT:  I don't know.  I don't know.  I mean, I

10    guess it would be if -- if the sole source -- I mean, this is

11    why it's going to get complicated.  If the sole source is the

12    laptop without independent sources, maybe.  I don't know.

13          MS. JENNESS:  Very well.

14          THE COURT:  So I just need to know what the "other"

15    is.  And it may come back that the government already knew

16    about this person without the computer.  I don't know.  We

17    don't know what they are.

18          And that may break this motion up even more because

19    the government may say, "Don't suppress Witness A because we

20    knew about Witness A separate and apart from this computer.  We

21    knew about A before we got the computer," or, "We knew about A

22    independent of what was on the computer, and here's why."

23          MS. JENNESS:  Your Honor, I don't think we'll see

24    that argument because --

25          THE COURT:  I don't know.  I'm just giving you an
```

```
 1   example.  I'm not saying I am or not.  I'm just saying that's
 2   why I can't answer your question because I don't know what the
 3   "other" is.
 4           MS. JENNESS:  Um-hmm.
 5           THE COURT:  And the other reason I wanted to know
 6   about the inventories was -- and I don't think so, but I'm not
 7   sure.  I worked on the dismissal -- motion to dismiss and this
 8   motion to suppress, and I've started to get around to the
 9   motion -- the omnibus motion on the evidence issues.  And I
10   couldn't -- I think I know, but I'm not sure whether any of
11   those photos that if I granted the motion to suppress would
12   make -- you know, I wouldn't have to rule on some photographs
13   if the genesis of the photographs were the memory card or the
14   laptop.  So that's another reason why I wanted to see the
15   inventories, to see did any of these photos begin with these
16   things -- these computers and camera.
17           MR. DOUGLAS:  I believe they all did.
18           THE COURT:  Well, see, that's why I stopped.  I said,
19   "Wait.  Time out.  Wait until I grant or deny the motion," and
20   then if I grant the motion, then I just -- that's moot.  I've
21   already -- they're not coming in because of the supression.  If
22   I deny the motion, Part C, get to the photographs.  Okay.  So
23   if they all did, that's good to know.
24           I couldn't tell.  I assumed so, but -- anyway.
25           Let me just give you some other thoughts so you can
```

```
 1    think about it in terms of tentatively where I'm at.
 2              The affidavit, as it related to the search warrant of
 3    the computer and camera and memory card, was provided in full
 4    by the government, so I was able to look at that and feel
 5    comfortable in some of my conclusions.
 6              Ms. Jenness, you make this 60-day argument that I,
 7    frankly, still don't follow, but as I understand it, it relied
 8    predominantly upon Exhibit A.
 9              And here's a problem that I have, which is the
10    problem with presenting partial affidavits.  When you -- you
11    provided me with paragraph 8, and that provides:
12              "On February 11th, 2011, ICE Special Agent Matthew
13              Hernandez coordinated the search of Williams'
14              belongings with CBP upon Williams' arrival at LAX
15              airport in accordance with ICE and CBP border search
16              authority.  Williams arrived at LAX with the
17              following items in his possession and it was searched
18              by Special Agent Hernandez and CBP personnel."
19              And then it's blank.  I can assume what those items
20    are.  I don't know for sure.
21              Then you make certain statements about -- so then you
22    go to paragraph 12 and you say, "Between June 10, 2011, and
23    September 6, 2011, I conducted forensic review of the above
24    items and discovered the following," blank.
25              So I think I know what you're saying, but I still --
```

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

```
1    I think without a complete affidavit, I have to guess about

2    what the above items are.

3              MS. JENNESS:  I'm happy to file the complete

4    exhibits.

5              THE COURT:  All right.  And I think -- on the other

6    hand, too, I think the government -- I think you really need to

7    think about -- you've taken the position in the briefing

8    about -- and I think nobody disagrees with the broad power of

9    the government at the border, although that power is -- is less

10   broad after Cotterman in some respects.

11             In relying on the broad authority at the border, you

12   seem to be comfortable distinguishing every other brand of case

13   that doesn't occur at the border, and I'm not sure -- I'm not

14   with you yet on the distinction -- that why there -- why in the

15   context of the border, you can hold something for a significant

16   period of time, over 90 days, and just because something is a

17   search of the mails, or whatever it is, as it relates to

18   property not at the border, that somehow these limitations that

19   the courts have talked about don't apply.

20             So think about how you want to persuade me on that

21   point.  Am I clear?  Am I being clear?

22             MR. SINHA:  Yes, Your Honor.  Would you like any --

23   you know, we didn't have a sur-reply scheduled for the briefing

24   schedule.

25             THE COURT:  No, I just -- I think we're ready to
```

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1    argue.  I just wanted to give you some tentative as to -- you

2    know, I'm not on board that all this -- because this is at the

3    border that this should be treated differently than other

4    searches in land, and I think you should just be prepared to

5    argue that -- that point.

6            MS. JENNESS:  Your Honor, are there additional issues

7    that the Court would like the defense to be prepared to address

8    more than we have already?

9            THE COURT:  No.  I think if we get that, we're one

10   step closer, I hope, to being ready.

11           Any questions about what I've requested?

12           Let me just go through my notes one more time to make

13   sure I don't have any questions that counsel would need time to

14   address.

15           There is one, and that's this -- and the parties

16   didn't address it.  And I was going to ask at the hearing, so I

17   will ask it now, not expecting a response, so you can think

18   about it.

19           Is the camera or the memory card, should those items

20   be treated differently?  Because at the border, the officer

21   sees -- or the special agent sees photographs that he believes

22   is child pornography.  It turns out to be child pornography.

23           One of the points that the government makes -- so

24   let's -- once that's determined to be contraband -- and the

25   government could retain that if they were going to indict on

1    possession of child pornography.   Once they retain this

2    contraband, is that different because they know it's

3    contraband?

4           The computers, they don't know what's on it, right?

5    But once this memory card or this camera can be kept all the

6    way through indictment and trial, does that put that camera or

7    memory card in a different place than the computers because you

8    don't know what's on it?

9           So it's like -- you know, once you find some -- let's

10   say there was a drug buried in the camera.   Once you see

11   that -- and somehow it's detectable without getting into the

12   camera.   Once you have that and you're going to keep it for

13   trial -- and you can keep it, anyway, for as long as you like

14   because you're going to hold that 'til you go to trial, does

15   that put the memory card in a different place?

16          And the parties didn't break it down that way.   It

17   was just -- and I also got the feeling that maybe -- maybe it

18   was because they -- that everybody cared less about the memory

19   card than the computer.   So I thought maybe I wasn't seeing it

20   broken down or analyzed that way because the parties really

21   didn't give much care about the memory card, so I -- but I

22   wanted to tell you if there is something significant about that

23   memory card, that this was a different way that I was looking

24   at it that I didn't think the parties addressed.

25          Do you see what I'm saying?   If it's contraband and

```
 1   you know it's contraband, you can keep it to trial.

 2          MS. JENNESS:  Your Honor, I do -- I do see Your

 3   Honor's point and the difference between known contraband and

 4   something like a computer --

 5          THE COURT:  Where you don't know.

 6          MS. JENNESS:  -- that you don't know what's inside

 7   it.  I think that -- and I did consider the issue in how to

 8   brief the items and, ultimately, did want them in for the

 9   reasons that Your Honor articulated, but I think that the issue

10   with what was seen on the camera is one that would probably

11   require an evidentiary hearing to fully adjudicate because,

12   although I didn't know early on what those images were, I do

13   think that I've been able to identify them now from the

14   information we've got from the prosecution, and I think they're

15   just mere nudity of a post-pubescent young man, so I don't

16   think it would be conclusive that they were child pornography.

17   And the agent's actions in not detaining my client supports my

18   position on that.

19          THE COURT:  I was kind of -- you know, it was -- the

20   special agent opined that it may, and then I think I read

21   somewhere later that it was confirmed, and there wasn't any

22   tie-in as to why -- how it was confirmed, and so -- but, in any

23   event, I don't know if the government wants to say anything on

24   that.  That was just something else I was thinking about in

25   terms of asking.
```

```
 1          MR. SINHA:  You know, Your Honor, they suspected that

 2    it was child pornography at the airport.  They were later able

 3    to track down the person who was pictured, the victim, and

 4    confirmed his age is basically what happened.

 5          They chose not to arrest Mr. Williams at the moment

 6    at the airport based on the number of images that they had.

 7    I'm not sure that's indicative of the extent to which they

 8    believed that -- you know, you have sworn testimony from Agent

 9    Yesensky in the affidavit saying that he believed it was child

10    pornography.

11          THE COURT:  All right.  We'll see you next Monday.

12          MS. JENNESS:  Your Honor, may I address the issue of

13    the discovery motion which was put over until today?

14          The issues potentially, I guess, could be mooted, but

15    we're having continuing frustration with the ongoing production

16    of old materials.  It's posing a challenge for our preparation

17    for trial.  It's been a disadvantage to us in preparing this

18    motion.

19          I think when I first filed the motion, we got, I

20    believe, ten additional supplements of discovery between when

21    the motion was filed and when it was heard, and I've gotten

22    five additional supplements of discovery since Your Honor heard

23    the motion.

24          In particular, I'm concerned about the absence of

25    handwritten notes.  I'm aware from those that were given to us
```

1   regarding some of the witnesses that Agent Yesensky takes

2   extremely detailed notes, even in cases where a recording is

3   being made, and then writes up a very detailed 302 from them.

4        I have 302s from, I believe, three of the people who

5   are on the prosecution's trial list.  I have no handwritten

6   notes.

7        Now, it really is, frankly, inconceivable to me that

8   someone whose protocol clearly is to take very detailed notes

9   all of a sudden didn't when it came to other witnesses.  It's

10  not impossible, but I'm suspecting that those notes were, in

11  fact, taken, and I think that under the circumstances, we ought

12  to have a reason.  I raised the issue repeatedly, and

13  eventually I got an e-mail from a paralegal saying, "Oh, I

14  talked to the agent.  There are none."

15       THE COURT:  There are none?

16       MR. SINHA:  Your Honor, you know, we've talked to

17  counsel about it several times.  We've talked to the agent

18  about it several times.  It's my belief that the handwritten

19  notes that are in existence and that would be discoverable have

20  been disclosed.  If we find any additional ones -- and we

21  continue to search for them -- we will disclose them.  You

22  know, we think that they have been disclosed.

23       MS. JENNESS:  And if we get to trial and a witness

24  testifies and I say, "Did the agent take notes" --

25       THE COURT:  I mean, look, again, what else do you

1 | want me to do?  What is it you want me to do?  If that happens,
2 | then you can -- well, we'll figure it out.  But what am I
3 | supposed to do about the government now tells a federal judge
4 | in open court there's nothing else?  What am I supposed to do?
5 | Water-board him or something?  I mean, what am I supposed to
6 | do?  He's just told me in open court he doesn't have them.  I
7 | can't do -- so if it turns out that, A, he was negligent,
8 | flat-out lied to me, we'll talk about it later.  But what --
9 |         MS. JENNESS:  I don't think those things have
10 | happened, Your Honor, and I haven't accused counsel of them,
11 | but I am concerned that they've been destroyed, and I think if
12 | that has happened, here on the defense side, we should be
13 | entitled to know that.
14 |         THE COURT:  All right.  Okay.  We'll see you Monday
15 | at 2 o'clock.  Thank you.
16 |         MR. SINHA:  Thank you, Your Honor.
17 |         MS. JENNESS:  Thank you, Your Honor.
18 |     (Proceedings concluded 2:12 P.M.)
19 |                 --oOo--
20 |
21 |
22 |
23 |
24 |
25 |

```
 1

 2

 3                          CERTIFICATE

 4

 5        I hereby certify that pursuant to Section 753,

 6   Title 28, United States Code, the foregoing is a true and

 7   correct transcript of the stenographically reported

 8   proceedings held in the above-entitled matter and that the

 9   transcript page format is in conformance with the

10   regulations of the Judicial Conference of the United States.

11

12   Date: AUGUST 6, 2014

13

14

15

16

17         /s/  Cindy L. Nirenberg, CSR No. 5059

18                        Official Court Reporter

19

20

21

22

23

24

25
```